UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-22329-CIV-ROSENBAUM

THOR FREDERIK HOFF,

    Plaintiff,

vs.

STEINER TRANSOCEAN, LTD.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO STRIKE
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court upon Defendant's Motion to Strike Portion of Donald M. Thea, M.D.'s, Report Regarding Causation of Infection [ECF No. 60] and Defendant's Motion for Summary Judgment [ECF No. 61]. The Court has reviewed both motions, the supporting and opposing filings, and the evidence in the record and is otherwise fully informed in this matter. For the reasons set forth below, the Court denies both motions.

**I. Background**

In this action, Plaintiff alleges that he suffered a serious infection after receiving a pedicure aboard a cruise ship at a spa operated by Defendant. Defendant moves to strike a portion of Plaintiff's expert's report and moves for summary judgment on the grounds that the opinion of Plaintiff's infectious disease expert, Dr. Donald Thea, provides insufficient support for Plaintiff's contention that the infection he contracted was caused by the pedicure. Defendant maintains that because Dr. Thea's report amounts to "mere speculation," it should be stricken from the record, and summary judgment should be granted in Defendant's favor.

## II. Discussion

### A. Defendant's Motion to Strike Dr. Thea's Report

Defendant moves to strike the portion of Dr. Thea's report concerning the cause of Plaintiff's infection. Because the Court's ruling on the Motion to Strike will directly impact the summary-judgment motion, the Court addresses this issue first.

When a party proffers the testimony of an expert under Rule 702 of the Federal Rules of Evidence, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). In making the determination of whether expert testimony and any report prepared by the expert may be admitted, the Court engages in a three-part inquiry of whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *Id.*

In a district court's analysis under *Daubert*, the court must take on the role of a gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*

*DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Under this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). But "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341; *Maiz*, 253 F.3d at 666 (quoting *Allison*, 184 F.3d at 1311). Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293, n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

Here, Defendant challenges the expert testimony of Dr. Thea on the reliability prong of the *Daubert* test. In particular, Defendant maintains that the causation portion of Dr. Thea's opinion should be excluded because it amounts to mere speculation, and Dr. Thea cannot rule out other possible causes of Plaintiff's infection.

The reliability inquiry seeks to ensure that an expert's testimony "rests on a reliable foundation." *Frazier*, 387 F.3d at 1261 (quoting *Daubert*, 509 U.S. at 597) (internal quotation marks omitted). To survive this requirement, proposed expert testimony "must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Id.* (quoting *Daubert*, 509 U.S. at 590). In evaluating reliability in cases involving expert opinions allegedly rooted in science, the court considers, to the extent practicable, "(1) whether the expert's theory can be tested and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or

potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (quoting *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (citations omitted)). As the Eleventh Circuit has noted, however, "[t]hese factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *Id.* (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150-52 (1999); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)).

      Turning to the area of non-scientific, experience-based testimony, while these same criteria may be used to evaluate its reliability, sometimes other factors may prove more useful. *Frazier*, 387 F.3d at 1262. Consequently, a district court enjoys flexibility in conducting the reliability analysis. The applicability of *Daubert* factors in assessing reliability in any "given case will depend . . . on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 150) (internal quotations omitted). Whatever the appropriate inquiry in a particular case, however, where, as here, the proposed expert's opinion relies principally upon his experience and knowledge, the Court must satisfy itself that the witness has appropriately explained how his experience leads to the conclusion he reached, why that experience provides a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *Id.* at 1261. "An expert's unexplained assurance that [his] opinions rest on accepted principles" is not enough. *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1130 (M.D. Fla. 2007) (citing *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005)).

In his report, Dr. Thea states that the source of entry of Plaintiff's infection was Plaintiff's right foot and that the infection was caused by one of the pedicures Plaintiff received while on board the ship. In support of his opinion, Dr. Thea notes that Plaintiff had two pedicures while on the cruise—one on October 3, 2011, and another one on October 6, 2011. During the first pedicure, Plaintiff suffered a small laceration to his right middle toe, which bled for several minutes. On October 7, 2011, Plaintiff became symptomatic, experiencing pain and general malaise. The symptoms subsequently worsened over the next two days, resulting in Plaintiff's being hospitalized on October 9, 2011. Based on the hospital records and the nature and progression of Plaintiff's symptoms, Dr. Thea opines that Plaintiff suffered from right-leg cellulitis, a bacterial infection of the skin.

According to Dr. Thea, the bacteria that caused the infection entered through Plaintiff's right foot. Dr. Thea indicates that the infection primarily affected Plaintiff's right lower extremity, which is consistent with the records from Plaintiff's hospital stay. *See, e.g.*, ECF No. 102-2 at 1 (noting that the infection developed "along the entire right leg"). Given the manifestation of Plaintiff's symptoms, Dr. Thea ultimately determined that the infection entered through Plaintiff's toe. In this regard, Dr. Thea notes that Plaintiff suffered from lymphangitis, an inflamation of the lymphatic channels caused by infection. He explains that lymphangitis occurs when an infection infiltrates the body from a distal location and enters the lymphatic channel. At the evidentiary hearing, Dr. Thea expounded that once the infection is in the lymphatic channel, it ascends towards the body's regional lymph node. Dr. Thea then testified that this was consistent with Plaintiff's reports of pain in his right groin, as it was subsequently determined that the lymph node in his groin was inflamed.

Because the hospital records indicated that the right foot was red and swollen, Dr. Thea

further gleaned that the bacteria had infected Plaintiff's right foot . According to Dr. Thea, this type of infection progresses upwards on the body; thus, the portal of entry, he maintains, must have been located far enough down Plaintiff's leg to explain the infection of the foot. Because the foot was infected, Dr. Thea concluded that the entry location of the bacteria was Plaintiff's toe.

In addition to his determination that the right toe was the portal of entry, Dr. Thea also opined that the cellulitis entered Plaintiff's skin during one of the pedicures. Dr. Thea explained that cellulitis is caused by the entry of bacteria through breaches in the skin barrier. ECF No. 60-1 at 2. While those breaches may be clinically unapparent, Dr. Thea stated in his deposition that such abrasions result from a "certain degree of trauma" or "some sort of physical injury." ECF No. 92-1 at 18. Because nothing else in the record indicated that Plaintiff had complained of any other abrasions or injury on his foot, Dr. Thea deduced that the infection resulted from the significant manipulation of his toes and cuticles during the pedicure. Since it is undisputed that Plaintiff was cut on his left toe, Dr. Thea opined, in conjunction with the report of Plaintiff's expert nail technician, that it was likely that Plaintiff also suffered other non-bleeding lacerations on his right foot.

The crux of Defendant's objection to Dr. Thea's testimony is that his opinion with respect to causation is speculative. In particular, Defendant contends that Dr. Thea relies solely on the timing of the disease, and no evidence exists that any unseen abrasion resulted from the pedicure. Defendant further avers that Dr. Thea cannot rule out other possible causes of infection, such as an insect bite or athlete's foot. After reviewing Dr. Thea's report, the deposition transcript, and Dr. Thea's testimony at the evidentiary hearing, the Court respectfully disagrees with Defendant's assertions.

First, Dr. Thea's opinion is not based merely on the timing of the infection. Rather, it is apparent that Dr. Thea, from his experience as an infectious disease clinician, also formed his conclusion on the basis of the progression and nature of the illness and the manipulation of Plaintiff's feet—and particularly his cuticles—during the pedicures. While Dr. Thea did indeed note that the incubation period for the infection conformed with the timing of Plaintiff's symptoms, he also relied upon his knowledge of how such infections occur and develop. Moreover, while it is true that Dr. Thea cannot rule out with complete certainty that Plaintiff did not have other non-pedicure related abrasions on his feet, such certainty is not required in this context. On the contrary, the expert must simply testify to a *reasonable degree* of medical certainty. *See Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 715 (11th Cir. 2008); *see also Daubert*, 590 U.S. at 590 ("[I]t would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science.").

Here, Dr. Thea testified that he ruled out other causes because, other than the cut on Plaintiff's left foot, Plaintiff had complained of no other injury to his feet, and the medical records were devoid of any reference to other abrasions. As discussed above, based on his knowledge of the infection's progression, Dr. Thea surmised that the portal of entry was the right foot. Furthermore, the fact that pedicures involve significant manipulation of the cuticle, coupled with Plaintiff's prior laceration, led Dr. Thea to conclude that the pedicure was the cause of infection. This is sufficient under *Daubert*. *See In re Trasylol Prods. Liab. Litigation*, No. 08–MD–01928, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

The Court certainly does not make a determination on the weight that Dr. Thea's testimony should be accorded, nor does the Court opine that Dr. Thea's report is perfect in every respect. But Dr. Thea's experience and training provide sufficient indicia of reliability for his opinions based on them to survive a *Daubert* inquiry. While the Court appreciates Defendant's arguments concerning certain gaps in the report, they are not a basis for excluding the testimony in this case, and Defendant may make those same arguments at trial. As previously noted, it is not the Court's function to reach "ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341; *Maiz*, 253 F.3d at 666 (quoting *Allison*, 184 F.3d at 1311). Rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). As long as a reliable basis exists for the expert's opinion, it is admissible, and it is then up to the parties to vet the opinion before the jury. Dr. Thea's report satisfies this threshold. Accordingly, Defendant's Motion to Strike is denied.

**B. Defendant's Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

On a motion for summary judgment, the Court views the evidence, including all reasonable inferences drawn from it, in the light most favorable to the non-moving party and resolves all reasonable doubts against the movant. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008); *Johnson v. City of Mobile*, 321 F. App'x 826, 830 (11th Cir. 2009). The Court does not weigh conflicting evidence. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007), *reh'g and reh'g en banc denied*, 254 F. App'x 803 (11th Cir. 2007). Nor does the Court determine the credibility of witnesses. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citation omitted). Upon discovering a genuine material dispute, the Court must deny summary judgment and proceed to trial. *Id.* at 1292.

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by his own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343.

Local Rule 56.1, S.D. Fla., further factors into this Court's consideration of a motion for summary judgment. Under Local Rule 56.1, a party moving or opposing summary judgment must

submit a "statement of the material facts as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively." S.D. Fla. L.R. 56.1(a). The rules require these statements be supported by "specific references" to evidence on the record. S.D. Fla. L.R. 56.1(a)(2). The Local Rules expressly caution, "All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L.R. 56.1(b). But even where an opposing party neglects to submit any alleged material facts in controversy, the court must still satisfy itself that the evidence on the record supports the uncontroverted material facts that the movant has proposed. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

Here, the ground for Defendant's Motion for Summary Judgment is Defendants' contention that Dr. Thea's expert opinion is based on improper speculation. As discussed above, however, Dr. Thea's testimony regarding the cause of the infection is sufficiently reliable, thus rendering it admissible at trial. Moreover, the report of Defendant's medical expert contradicts that of Dr. Thea. Specifically, Dr. Darouiche has opined that Plaintiff did not contract the infection from the pedicure and that, instead, Plaintiff had a number of conditions that predisposed him to such an ailment. ECF No. 61-3 at 4. As a result, causation is undoubtedly in dispute, and it is the factfinder's duty to assess the witnesses' credibility. Such conflicting evidence must be left for the jury's determination. *See In re Trasylol Prods. Liability Litigation*, 2010 WL 1489793, at * 6. Because a genuine issue

of material fact exists, summary judgment is inappropriate. For these reasons, Defendant's Motion for Summary Judgment is denied.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Strike Portion of Donald M. Thea, M.D.'s, Report Regarding Causation of Infection [ECF No. 60] and Defendant's Motion for Summary Judgment [ECF No. 61] are **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 24th day of January 2014.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies to:
Counsel of record